MATHEW W DOS SANTOS, OSB 155766
mdossantos@aclu-or.org
KELLY K SIMON, OSB 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
PO Box 40105
Portland OR 97240
503.227.6928 (tel)
Attorneys for Plaintiff

STEPHEN W MANNING, OSB 01337
smanning@ilgrp.com
JENNIFER M ROTMAN, OSB 04134
jrotman@ilgrp.com
JESSICA M BOELL, OSB 020220
jboell@ilgrp.com
IMMIGRANT LAW GROUP PC
PO Box 40105
Portland OR 97240
503.241.0035 (tel)
503.241.7733 (fax)
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## [PORTLAND DIVISION]

| | |
|---|---|
| UNITE OREGON,<br><br>        Plaintiff<br><br>        v.<br><br>DONALD J. TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVEN K. | Case No.<br><br>COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF |

MCALEENAN, Acting Commissioner
of CBP; JOHN D. BARNES, CBP Area
Director, Port of Portland,

Defendants

## Introduction

1.   This is a complaint for declaratory and injunctive relief to prevent Defendants from unconstitutionally banishing Plaintiffs – lawful immigrant, nonimmigrants, or refugees who seek to return to their homes or jobs or reunite with their families in Oregon – from the Portland International Airport under President Donald J. Trump's January 27, 2017 Executive Order ("Executive Order") and to provide Plaintiffs with access to legal counsel.

2.   Under the authority of the Executive Order, as implemented at the Portland International Airport, the Defendants have unlawfully detained and will continue to unlawfully detain Oregonians, family members of Oregonians, individuals working in and supporting Oregon business, among others all of whom are lawful immigrants, nonimmigrants, or refugees because of their religion and national origin without due process of law. Under the Executive Order, during these unlawful detentions, immigrant and refugee travelers are subject to extended detention, and interrogation to determine whether they qualify for a waiver. This arbitrary and capricious adjudication at the hands of federal agents determines whether immigrants and refugees are subject to banishment from the United States without a

hearing. Moreover, the Defendants have unlawfully denied and will continue to unlawfully deny these Oregonians access to counsel. Therefore, on behalf of itself and others similarly situated who are detained or interrogated at the Portland International Airport, Unite Oregon seeks a declaration that the application of the Executive Order to them is unconstitutional and that the Executive Order as applied to them should be enjoined.

## Subject Matter Jurisdiction

3.   The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This action arises under the U.S. Constitution and the Immigration and Nationality Act which is a law of the United States.

4.   The court has subject matter jurisdiction under 28 U.S.C. § 1346(a)(2) (United States as defendant). This is a civil action against the officers and agencies of the United States founded upon an Executive Order of the President.

5.   Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

## Venue

6.   Pursuant to 28 U.S.C. § 1391(b)(2) and 1391(e)(1), venue is proper in the

District of Oregon because the Defendants are officers of the United States and a substantial part of the events or omissions giving rise to this claim occurred or will occur in Oregon.

## Parties

7.  Plaintiff, Unite Oregon, is a membership-based nonprofit corporation organized under Oregon and based in Oregon. It is led by people of color, immigrants and refugees, rural communities, and people experiencing poverty who work across Oregon to build a unified intercultural movement for justice. Unite Oregon operates several programs designed around their core values of inclusivity, racial justice, social justice, empowerment, stewardship, respect, transparency, and equity to increase the public leadership, expand civic engagement, important public policy advocacy. Unite Oregon is suing on behalf of itself and in its associational capacity.

8.  Defendant Donald J. Trump is the President of the United States and he is being sued in his official capacity.

9.  Defendant John F. Kelly is the Secretary of Homeland Security and is the head of the U.S. Department of Homeland Security (DHS) and has ultimate responsibility for the administration and enforcement of the immigration laws. He is sued in his official capacity.

10. Defendant Kevin K. McAleenan is the Acting Commissioner of U.S.

Customs and Border Protection and is responsible for the implementation of the Executive Order at the ports of entry of the United States. He is sued in his official capacity.

11. Defendant, John D. Barnes is CBP Area Director for the Port of Portland is responsible for the implementation of the Executive Order at the Portland International Airport. He is sued in his official capacity.

12. Defendant, U.S. Department of Homeland Security is a cabinet department of the United States federal government with the primary mission of securing the United States.

13. Defendant, U.S. Customs and Border Protection is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

## Legal Framework

## President Trump's Executive Order

14. President Donald Trump notoriously campaigned on the promise to ban Muslims from entering the United States and burden the lives of those living in the United States.

15. Throughout his presidential campaign, candidate Trump repeatedly expressed views on Islam and Muslims that were rooted in Islamophobia and hateful

stereotypes of Muslims.  These views included statements like, "Islam hates us" and accusing Muslim-Americans of protecting terrorists.

16. For example, on December 7, 2015, Donald Trump called "for a total and complete shutdown of Muslims entering the United States." As of the date of this filing, the press release remains available on Trump's campaign website.

17. On June 14, 2016, Donald Trump promised to ban all Muslims from entering the United States until "we as a nation are in a position to properly and perfectly screen those people coming into our country."

18. On July 24, 2016, Donald Trump explained that his June 14 comments were an expansion on his ban on Muslims.

19. On August 15, 2016, in a foreign policy speech, Donald Trump proposed creating an ideological screening test for immigration applicants, which would "screen out any who have hostile attitudes towards our country or its principles — or who believe that Sharia law should supplant American law." During the speech, he referred to his proposal as "extreme, extreme vetting."

20. On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.

21. One week later, on January 27, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States,"

which is attached hereto as Exhibit A and is hereinafter referred to as the "Executive Order." President Trump executed on his hateful campaign rhetoric with the Executive Order.

22. In statements to the press in connection with his issuance of the Executive Order, President Trump prioritized admitting Christian refugees to the United States over Muslims.

23. This prioritization of Christians is written into the Executive Order in Section 5 (b), which states in part, that Department of Homeland Security (DHS) should "prioritize refugee claims made by individuals on the basis of religious-based persecution, provided that the religion of the individual is a minority religion in the individual's country of nationality."

24. There are no majority Christian countries in the Middle East.

25. Citing the threat of terrorism committed by foreign nationals, the Executive Order directs a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States, particularly (although not exclusively) as refugees. Among other things, the Executive Order imposes a 120-day moratorium on the refugee resettlement program as a whole; proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and therefore "suspend[s]" indefinitely their entry to the country; similarly proclaims that "the entry of more than 50,000 refugees in fiscal year 2017 would be

Page 7 - COMPLAINT

detrimental to the interests" of the country.

26. Most relevant to the instant action is Section 3(c) of the Executive Order, in which President Trump proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

27. There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen. According to the terms of the Executive Order, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the Executive Order.

28. Section 3(c) of the Executive Order forbids any entry of immigrants and nonimmigrants from countries referred to in section 217(a)(12) of the Immigration and Nationality Act, 8 U.S.C. § 1187(a)(12), i.e., Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen "for 90 days from the date of this order."

29. Section 3(e) of the Executive Order calls for recommendations from the Secretary of State and Homeland Security for countries to be extended indefinitely.

30. Section 3(g) provides that only immigrants who are issued a "case-by-case" waiver by the Secretaries of State and Homeland Security may enter the country. All

other immigrants must be immediately removed.

31. Sections 5(a)—(b) of the Executive Order suspend the U.S. Refugee Admissions Program in its entirety for 120 days and Section 5(c) of the Executive Order proclaims that entry of Syrian refugees is "detrimental to the interests of the United States" and suspends their entry indefinitely."

32. Section 5(e) provides that only refugees who are issued a "case-by-case" waiver by the Secretaries of State and Homeland Security may enter the country. All other refugees will be immediately banished.

33. Soon after the Executive Order was issued, many immigrants and refugees across the country were subject to interrogation without counsel, detention, and, in at least one case, expedited removal pursuant to Section 3(c).

## Implementation and Impact of the Executive Order in Oregon

34. Portland International Airport ("PDX") is Oregon's largest airport and accounts for nearly all public, flight travel of the state.

35. The operation of PDX provides an enormous economic benefit to the state. According to the PDX Community Advisory Committee's April 11, 2013 Regional Economic Impact of Portland International Airport, PDX accounted for $1.5 Billion in person income, $5.57 Billion in business revenue, $411 Million in local purchases, and $168 Million in state and local taxes.  According to the same report, air visitors

spent $1.8 Billion in the local visitor industry.

36. On January 28, 2017, the Honorable Ann M. Donnelly of the U.S. District Court for the Eastern District of New York issued a nationwide stay of removal which provides that the federal government is "enjoined and restrained from, in any manner, removing individuals with refugee applications approved by U.S. Citizenship and Immigration Services as part of the U.S. Refugee Admissions Program, holders of valid immigrant and non-immigrant visas, and other individuals from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen legally authorized to enter the United States." The court found that the "petitioners have a strong likelihood of success in establishing that the removal of the petitioner and other similarly situation violates their rights to Due Process and Equal Protection guaranteed by the United States Constitution."

37. On January 28, 2017, the Honorable Leonie M. Brinkema of the U.S. District Court for the Eastern District of Virginia issued a Temporary Restraining Order ordering "respondents shall permit lawyers access to all legal permanent residents being detained at Dulles International Airport."

38. Upon information and belief, all lawful immigrants and nonimmigrants or individuals from the seven target countries and all refugees have been detained or will be detained in PDX under the authority of the Executive Order.

39. Although an individual cannot presently be removed from the United States

under the Executive Order because of the temporary injunction, the injunction does not require that an individual be released from detention.

40. Instead, on information and belief, at PDX, individuals from the targeted countries, all lawful immigrants and nonimmigrants including lawful permanent residents, are subjected to an extended detention during which they are interrogated by CBP. The purpose of the interrogation is to make an adjudication under the Executive Order for the individual's release from detention (or, in the absence of the injunction, the individual's deportation).

41.  Under the Executive Order, the CBP adjudicates critically important rights during the period it detains the individual including whether the individual will continue to be detained. The detained individuals must make important decisions about their legal rights including whether or not to withdraw their applications for admission and their legal obligations, such as answering or responding to interrogations under the Executive Order.

42. Being accompanied, represented, or advised by counsel in making these life altering decisions will limit the risk of erroneous deprivation of individual liberty interests and provide transparency and procedural protections in the face of an opaque Executive Order that does not provide for a meaningful standard for adjudication, does not limit the type of interrogation and does not limit the period of detention.

43. Because of the importance of access to counsel in light of the unprecedented Executive Order and its implementation at PDX, the Oregon Chapter of the American Immigration Lawyers Association and the American Civil Liberties Union of Oregon have organized pro bono attorneys at PDX to accompany, represent, and advise individuals detained and interrogated under the Executive Order.

44. On January 29, 2017, the ACLU released a statement asking Oregonians to call in if they or someone they know "has a family member who will be arriving in the next 72-hours from Iraq, Syria, Iran, Libya, Somalia, Sudan or Yemen at Portland International Airport (PDX), or who was detained already by Customs pursuant to President Trump's Executive Order." The program was created to provide free legal counsel to anyone detained, interrogated, searched, or subject to deportation because of the Executive Order and its application.

45. On information and belief, the Defendants have denied individuals detained under the Executive Order the ability to be accompanied, represented or advised by counsel. The Defendants have implemented a policy at PDX to prohibit access to counsel to individuals detained under the Executive Order and will continue to deny access to counsel for individuals detained under the Executive Order.

46. For example, on January 29, 2017, a lawful permanent resident detained under the Executive Order because he was Iranian was denied access to a pro bono

immigration attorney.

47.  Lawful permanent residents enjoy the ability to travel to and from the United States without encumbrance subject to § 101(a)(13)(C) of the Immigration and Nationality Act.  This is an important benefit of lawful permanent residence.

48. Under the immigration laws, Congress created a unified status of lawful permanent residence. *See* INA § 101(a)(20). A permanent resident is "accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." *Id.* Under the immigration laws, there is no statutory subsets of limited rights or benefits to different classes of lawful permanent residents.

49. Section 3 of the Executive Order imposes a minimum 90-day ban on the ability to travel of lawful permanent residents based on national origin and religion. The 90-day period banning travel by individuals from targeted countries, including lawful permanent residents, may be extended under the standard established in Section 3. According to more than one thousand foreign service officers and civil servants of the U.S. State Department, "[t]his ban, which can only be lifted under conditions which will be difficult or impossible for countries to meet, will not achieve its stated goal of to protect the American people from terrorist attacks by foreign nationals admitted to the United States." *See* Jeffery Gettleman, *State Dept. Dissent Cable on Trump's Ban Draws 1,000 Signatures*, NY Times at A1 (Feb. 1,

2017) (citing and linking to a draft Dissent Channel message).

50. The Executive Order applies to lawful permanent residents of the targeted countries and requires them to undergo detention and interrogation and therefore encumbers their ability to travel.

## Unite Oregon

51. Unite Oregon is a nonprofit organization incorporated in Oregon whose mission is to work across Oregon to build a unified intercultural movement for justice that is led by people of color, immigrants and refugees, rural communities and people experiencing poverty.

52. Unite Oregon is a membership organization.

53. Unite Oregon's membership consists of numerous immigrants and refugees from Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.

54. Unite Oregon's membership consists of numerous immigrants and refugees who are Muslim from each of the enumerated countries.

55. Unite Oregon's membership consists of lawful permanent residents, nonimmigrants, and refugees from each of the enumerated countries.

56. These Muslim immigrant and refugee members of Unite Oregon lawfully travel to and from the United States to visit family members, for legitimate social and business reasons, and have sought and will seek to have family members from

the enumerated countries reunite with them in Oregon.

57. These Muslim immigrant and refugee members of Unite Oregon have contributed substantially to the shared prosperity of Oregon, including, in particularly its rural communities.

58. Because of the Executive Order, members of Unite Oregon cannot travel unencumbered, cannot reunite with their families, cannot complete legitimate business and social obligations unencumbered.

59. Because of the Executive Order, members of Unite Oregon will be detained and denied access to counsel.

60. The Executive Order did not and does not provide for a meaningful hearing on the ability to travel for lawful permanent residents.

### Causes of Action

### Count 1
### Access to Counsel
### Fifth Amendment – Due Process

61. All previous paragraphs are incorporated as though fully set forth herein.

62. Defendants' acts of preventing attorneys to access individuals detained in their custody under the Executive Order at PDX violates the Due Process Clause of the Fifth Amendment.

**Count 2**

**Access to Counsel**

**5 U.S.C. § 555(b)**

63. All previous paragraphs are incorporated as though fully set forth herein.

64. Defendants' acts of preventing attorneys to access individuals detained in their custody under the Executive Order at PDX violates 5 U.S.C. § 555(b).

**Count 3**

**Access to Counsel**

**Immigration and Nationality Act**

65. All previous paragraphs are incorporated as though fully set forth herein.

66. Defendants' acts of preventing attorneys to access individuals detained in their custody under the Executive Order at PDX violates 8 C.F.R. § 292.5(b) and INA § 103.

**Count 4**

**Arbitrary Detention in Violation of Due Process**

67. All previous paragraphs are incorporated as though fully set forth herein.

68. Defendants have detained and will continue to detain individuals at PDX under the Executive Order or under color of the Executive Order in violation of the Due Process Clause of the Fifth Amendment.

**Count 5**

**Equal Protection**

**Fifth Amendment to the U.S. Constitution**

69. All previous paragraphs are incorporated as though fully set forth herein.

70. The Defendants have denied equal protection of the laws under the Executive Order.

71. The Executive Order targets individuals for discriminatory treatment based on their national origin and religion without lawful justification.

72. The Executive Order was motivated by animus and a desire to harm a particular group.

73. The discriminatory terms and application of the Executive Order are arbitrary and cannot be sufficiently justified by federal interests.

**Count 6**
**Establishment Clause**
**First Amendment to the U.S. Constitution**

74. All previous paragraphs are incorporated as though fully set forth herein.

75. The Defendants have violated the Establishment Clause of the First Amendment.

76. The Establishment Clause of the First Amendment prohibits the federal government from officially preferring one religion over another.

77. The Executive Order, together with statements made the Defendants concerning their intent and application, are intended to disfavor Islam and favor

Christianity.

## Count 7
## Procedural Due Process
## Fifth Amendment to the U.S. Constitution

78. All previous paragraphs are incorporated as though fully set forth herein.

79. The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of their liberty interests without due process of law.

80. Where Congress has granted statutory rights and authorized procedures applicable to noncitizens, minimum due process rights attach to those statutory rights.

81. In issuing and implementing the Executive Order, the Defendants have violated the Due Process Clause of the Fifth Amendment.

## Count 8
## Religious Freedom Restoration Act

82. All previous paragraphs are incorporated as though fully set forth herein.

83. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(a), prohibits the federal government from substantially burdening the exercise of religion, even if the burden results from a rule of general applicability.

84. The Executive Order as implemented in Oregon has resulted in substantial

burdens on the exercise of religion by noncitizen immigrants and refugees by, for example, preventing them from returning to their religious communities in Oregon and abroad. Such burdens on religion violate the Religious Freedom Restoration Act.

## Count 9
### Procedural Violation
### Administrative Procedures Act

85. All previous paragraphs are incorporated as though fully set forth herein.

86. The Administrative Procedure Act, 5 U.S.C. § 553, requires that federal agencies conduct formal rule making before engaging in action that impacts substantive rights.

87. By implementing the Executive Order, federal agencies have changed the substantive criteria by which individuals from the enumerated countries may enter the United States.

88. Federal agencies did not follow the procedures required by the Administrative Procedures Act before taking action impacting these substantive rights.

## Count 10
### Substantive Violation
### Administrative Procedures Act

89. All previous paragraphs are incorporated as though fully set forth herein.

90. The Administrative Procedures Act prohibits a federal agency from taking action that is arbitrary, capricious, an abuse of discretion, unconstitutional, or contrary to statute.

91. The Executive Order, as implemented, provides for an arbitrary, capricious, an abuse of discretion, an unconstitutional and contrary to statute decision-making and adjudications.

### Request for Relief

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

A. Declare that the Executive Order is unlawful and contrary to the Constitution and laws of the United States;

B. Issue an injunction ordering the Defendants to cease implementation of the Executive Order at the Portland International Airport;

C. Issue an injunction ordering the Defendants not to detain an individual solely on the basis of the Executive Order;

D. Issue an injunction ordering the Defendants to advise individuals of their right to counsel before commencing any interrogation under the Executive Order;

E. Issue an injunction ordering the Defendants to advise individuals that, during

the period of time that the Executive Order is in force, pro bono counsel is available to them through the ACLU of Oregon and volunteers with the Oregon Chapter of AILA;

F.  Issue an injunction ordering that the Defendants shall permit lawyers access to all individuals detained at PDX;

G.  Issue an injunction ordering the Defendants shall permit individuals access to phones with which to contact their friends, families and the pro bono attorneys or their consulates;

H.  Award Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

I.  Award all other relief to Plaintiff that it deems just, equitable, and proper.


Respectfully submitted on February 1, 2017.

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON

IMMIGRANT LAW GROUP PC

*/s/ Mathew W Dos Santos*
**MATHEW W DOS SANTOS**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
PO Box 40105
Portland OR 97240
503.241.0035 (tel)
503.241.7733 (fax)
Attorneys for Plaintiff

/s/ *Stephen W Manning*
**STEPHEN W MANNING**
IMMIGRANT LAW GROUP PC
333 SW Fifth Avenue Suite 525
Portland, OR 97204
503.241.0035 (tel)
503.241.7733 (fax)
smanning@ilgrp.com